CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 16 2012

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES KING, | ) | Case No. 7:09-cv-00410 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | |
| | ) | By: James C. Turk |
| FLINN & DREFFEIN ENGINEERING CO., | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant Flinn & Dreffein Engineering Co. ("F&D")'s Partial Motion to Dismiss (ECF No. 119). Plaintiff Charles King ("King") filed a brief in opposition, argument was heard on April 24, 2012, and the matter is now ripe for disposition. For the reasons stated below, F&D's Partial Motion to Dismiss (ECF No. 119) is **GRANTED in part and DENIED in part**.

### I. Factual and Procedural Background

The facts are set forth in the light most favorable to the Plaintiff. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In 1995, A.O. Smith Company ("A.O. Smith") ordered an industrial heat processing system from F&D to install at its facility in Roanoke, Virginia. The heat processing system consisted of several different components, including an austenitizing furnace, a quenching system, a drag chain conveyer, a charging conveyer, a tempering furnace, and a discharging conveyer. The purpose of the heat processing system was to heat treat steel rails which would then be used to assemble chassis for large trucks. A.O. Smith's plant in Roanoke was eventually taken over by Metalsa-Roanoke, Inc. ("Metalsa"). King worked for Metalsa as an operator. On September 29, 2006, King was working around F&D's industrial

heat processing system at the Metalsa plant. At some point on that day, one of the rails on the processing system became bowed. As this bowed rail reached the charging conveyer, it did not automatically go into the tempering furnace as designed. This was apparently a common problem, and Metalsa had come up with a solution: it trained its operators to use a specially-designated tool to manipulate bowed rails such that they could continue through the system. On September 29, King approached the charging conveyer, and using the tool provided by Metalsa, attempted to move the bowed rail forward such that the heat treat process could continue. While King was attempting to move the bowed rail, the rail jolted back. This caused the tool to strike King in the face. King lost his footing on the wet floor and slipped. As he lost his footing, King's hands got caught in the running chain and sprocket of the charging conveyer. As a result, King suffered severe and deforming injuries to his hands.

On September 17, 2008, King filed suit against F&D in the Circuit Court for the City of Roanoke. More than a year later, on October 7, 2009, F&D removed the action to this Court. On July 5, 2011, with leave of Court, King filed an Amended Complaint. On March 8, 2012, again with leave of Court, King filed a Second Amended Complaint ("SAC"), to which F&D responded with the instant partial Motion to Dismiss, asking the Court to dismiss the SAC (1) to the extent it alleges breach of a post-sale duty to retrofit; and (2) to the extent it alleges breach of a post-sale duty to warn.

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). A complaint must include a short and plain statement of the claim(s) under which the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Under the notice pleading standard employed by the

federal courts, the complaint need only "give the defendant notice of what the claim is . . . and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to survive a motion to dismiss, however, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In particular, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). While the Court is obligated to accept as true all of the complaint's well-pled factual allegations and take the facts in the light most favorable to the plaintiff, Adock v. Freightliner, LLC, 550 F.3d 369, 374 (4th Cir. 2008), it will not give the same reverence to "unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, 591 F.3d at 255 (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)). Finally, since the claims brought in this action are based on Virginia common law and brought pursuant to the Court's diversity jurisdiction, they are governed by the substantive law of Virginia. *See generally* Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

### III. Discussion

#### A. Preliminary Matters

##### 1. Timeliness

A defendant must ordinarily serve an answer or other responsive pleading within 21 days of being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). However, the rules are different when responding to an amended pleading. Unless otherwise permitted by court order, responses to an amended pleading must be made within the time remaining to respond to the original pleading (*i.e.*, within 21 days of service of the original Complaint), or

3

within 14 days of service of the amended pleading. Fed. R. Civ. P. 15(a)(3). *See* Tran Enters., LLC, v. DHL Express (USA), Inc., Civ. A. No. H-08-2748, 2009 WL 4604660, at *7 n.3 (S.D. Tex. Dec. 3, 2009); Uriarte v. Schwarzenegger, No. 06-CV-1558 W (WMC), 2010 WL 2792000, at *1 (S.D. Cal. Jul. 14, 2009). The Court has not entered an order modifying this general rule. King filed and served the SAC on March 8, 2012. F&D did not respond until March 28, 2012, far outside the time allowed by Rule 15.[1] *See also* Fed. R. Civ. P. 6 (describing rules for computing time). Accordingly, both F&D's Answer and its Motion to Dismiss are untimely.

King, however, has not objected to this untimely filing. His brief in opposition, as well as his oral argument, dealt solely with the merits of the motion. The Court thereby finds that King has waived any objection as to the motion's timeliness, and proceeds to consider it on the merits.

### 2. Matters Outside the Pleadings

King's response to F&D's motion includes no less than 16 exhibits totaling over 100 pages, and includes the equipment purchase agreement between F&D and King's employer, other discovery documents, and various snippets of deposition testimony. In ruling on a motion to dismiss, a court cannot consider matters outside the pleadings unless it converts the motion into one for summary judgment and gives the parties a reasonable opportunity to present information that is material to a summary judgment motion. Fed. R. Civ. P. 12(d); *Cf.* George v. Kay, 632 F.2d 1103, 1106 (4th Cir. 1980) ("If it is necessary for the court to look beyond the pleadings, the 12(b)(6) motion must be converted into a motion for summary judgment and all parties must be given the opportunity to present materials pertinent to such a motion."). *But see*

---

[1] F&D also later amended its Answer within 21 days of service, as it is entitled to do under Fed. R. Civ. P. 15(a)(1)(A).

4

New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994) (court may rely on materials outside pleadings where they are referenced in complaint). The instant case was first filed in state court on September 17, 2008, and has been pending for more than three years. See Compl., Ex. A to Notice of Removal, Oct. 17, 2009, ECF No. 1. Moreover, King's additional evidence is not particularly relevant to the matter at hand, and in any case, F&D has not had an adequate opportunity to submit extra-pleading materials of its own. To convert this motion to one for summary judgment would cause unnecessary delay and be contrary to the interests of justice. The Court declines to do so and must therefore exclude King's submitted materials from consideration in the resolution of the instant motion.

### B. Post-Sale Duty to Retrofit

Having dispensed with preliminary matters, the Court now proceeds to the merits of the motion. F&D first argues that the SAC should be dismissed to the extent it alleges a breach of a post-sale duty to retrofit because Virginia does not recognize any such duty under these circumstances. King concedes that Virginia law does not recognize a post-sale duty to retrofit. See Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss, Apr. 19, 2012, ECF No. 123, at 13. The undersigned has previously held as much. See Walker v. Caterpillar Indus., Inc., Civ. A. No. 91-0125-R, slip op. at 8 (W.D. Va. Oct. 19, 1993) (Turk, J.), aff'd, Nos. 93-2388, 93-2482, 1994 WL 406563, at *3 (4th Cir. Aug. 4, 1994) (per curiam). Because the parties agree that Virginia law does not recognize a post-sale duty to retrofit, extended analysis is unnecessary here, and F&D's motion is **GRANTED** as to the duty to retrofit.[2]

### C. Post-Sale Duty to Warn

---

[2] This holding does not affect King's retrofit claims to the extent he alleges that F&D had knowledge of the alleged defects before it sold the equipment. See discussion of "continuing wrongs," infra Part III.C.2.

5

### 1. Whether King has Adequately Alleged a Post-Sale Duty to Warn

One of the problems the Court faces in deciding the motion before it is the general convolution in King's Second Amended Complaint. The Federal Rules of Civil Procedure require that, to the extent possible, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). King has failed to comply with this rule, even though, as F&D points out, he has had three opportunities to do so. Rather, unfettered by subheadings or categorization of any kind, the SAC proceeds as a simple 56-paragraph chronology of events, occasionally interrupted by a legal theory or two. Despite the deficiencies in the SAC, the Court will not dismiss an action for mere want of style. *See generally* Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343 (2d Cir. 2006) (dismissal is improper on the basis of technical pleading irregularities); Fed. R. Civ. P. 1 (declaring that rules are to be construed and administered to secure the just determination of every action).

Initially, F&D moved to dismiss the SAC to the extent it "alleges a post-sale duty to warn" because Virginia does not recognize any such duty. However, in its reply brief and at oral argument, F&D amended its position and now urges that King has failed to even allege that F&D had a post-sale duty to warn.[3] F&D argues that any allegation of post-sale duty to be found in the SAC fails to meet the heightened standards outlined in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Twombly and Iqbal, the Supreme Court adopted a stricter interpretation of the notice pleading standard that has long-governed

---

[3] This begs the question, as the Court noted at oral argument, as to why F&D felt the need to move to dismiss claims that it does not believe are before the Court. F&D claimed that it just wanted to "clean up the complaint" and be sure it knew the contours of the case it was defending. The proper procedural vehicle to remediate F&D's confusion, at least at the pleading stage, might have been a Motion for More Definite Statement. *See* Fed. R. Civ. P. 12(e). *See generally* Hodgson v. Va. Baptist Hosp., 482 F.2d 821 (4th Cir. 1973).

6

civil actions in the federal courts. This stricter criterion is commonly termed the "plausibility standard." Under the plausibility standard, in order to survive a motion to dismiss, "the complaint must contain facts plausibly showing" that the defendants violated the law. Iqbal, 556 U.S. at 682. For his part, King points the Court to the following language in the SAC:

> The defendant's industrial heat processing system was unreasonably dangerous because it was unaccompanied by adequate warnings concerning its hazardous properties even though the defendant knew, or by the use of ordinary care had reason to know, that its product was potentially dangerous, this danger was not obvious or readily discoverable, and injury could reasonably be anticipated . . . .
>
> Defendant intentionally failed to take corrective action when these defects and dangers became known. The defendant chose not to voluntarily implement any safety improvements after it became aware of these defects and dangers.

SAC ¶¶ 46, 53. In particular, King urges, his allegation that F&D did not implement any "safety improvements" after it learned of the defects should be read to include warnings. Accordingly, he concludes, he has adequately alleged both a post-sale duty to warn and F&D's breach of that duty. This interpretation is, without a doubt, a stretch. The question for the Court under Iqbal, however, is whether the interpretation is plausible. "The plausibility standard is not akin to a 'probability requirement,' but . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Moreover, "[a]sking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the violation. Twombly, 550 U.S. at 556. Finally, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Ultimately, in ruling on a motion to dismiss, the Court's inquiry is not limited to an examination of particular paragraphs of the complaint. Rather, under these circumstances, its

7

obligation is to look at the "four corners of the complaint" and evaluate the pleading as a whole. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). With the benefit of its "judicial experience and common sense," Iqbal, 556 U.S.at 679, and considering the SAC as a whole, the Court reluctantly concludes that King has plausibly stated a claim for breach of a post-sale warning defect.

### 2. Whether Virginia Law Recognizes a Duty to Warn Where the Defendant Did Not Know or Had No Reason to Know of the Defect Prior to Delivery

King has adequately alleged that F&D breached a post-sale duty to warn, but that is not the end of the inquiry. If Virginia does not recognize such a duty, the claim must nonetheless be dismissed. At the outset, the Court notes what is *not* in dispute. It is clear that to the extent King alleges that F&D knew of or had reason to know of a defect in its product *prior* to delivery, he states a cognizable claim under Virginia law. *See* Large v. Bucyrus-Erie Co., 707 F.2d 94, 99–100 (4th Cir. 1983) (Winter, C.J., concurring in part and dissenting in part) (recognizing Virginia's longstanding recognition of "continuing wrongs" in failure to warn context). The issue before the Court is whether F&D had a duty to warn of any potential defects it learned of *after* the heat treatment system left its hands. Moreover, the Court's analysis here is limited to whether Virginia recognizes a post-sale duty to warn in the negligence context. *Cf.* Abbot v. Am. Cyanamid Co., 844 F.2d 1108, 1114 (4th Cir. 1988) ("Under Virginia law, recoveries for personal injuries caused by defective products can be made as breach of an implied warranty of merchantability or under a tort theory of negligent design.").

"Virginia law concerning a manufacturer's post-sale duty to warn is confusing at best." Douglas R. Richmond, *Expanding Products Liability: Manufacturers' Post-Sale Duties to Warn, Retrofit and Recall*, 36 Idaho L. Rev. 7, 39 (1999). And despite the recurrence of the issue over the years, the Supreme Court of Virginia has repeatedly refused to address it. *See, e.g.*, Royal

8

Case 7:09-cv-00410-JCT-RSB   Document 128   Filed 05/16/12   Page 8 of 15   Pageid#: 1007

Indem. Co. v. Tyco Fire Prods., LP, 704 S.E.2d 91, 97 n.3 (Va. 2011) (expressly declining to address appellant's argument that trial court improperly dismissed post-sale duty to warn claims); Harris v. T.I., Inc., 413 S.E.2d 605, 610 (Va. 1992) (assuming without deciding that a post-sale duty to warn exists). *See also* Peter Nash Swisher, *Products Liability Tort Reform: Why Virginia Should Adopt the Henderson-Twerski Proposed Revision of Section 402A, Restatement (Second) of Torts*, 27 U. Rich. L. Rev. 857 (1993). In the absence of controlling precedent from Virginia's highest court, it is this Court's role to predict how the Supreme Court of Virginia would rule on the matter, and issue its decision in accordance with that prediction. *See* Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008). Accordingly, aided by "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the [Supreme Court of Virginia], well considered dicta, and [Virginia] trial court decisions," Wells v. Liddy, 186 F.3d 505, 528 (4th Cir. 1999), the Court must gaze into its crystal ball and forecast where the Virginia Supreme Court would fall on the issue.[4]

### a. Decisions Applying Virginia Law

To begin, the Court looks to other decisions that have touched on a post-sale duty to warn in Virginia. In Bly v. Otis Elevator Co., 713 F.2d 1040 (4th Cir. 1983), the United States Court

---

[4] The Court is mindful of the privilege afforded it by the Supreme Court of Virginia to certify questions of state law to that court under certain circumstances. *See* Va. Sup. Ct. R. 5:40; Va. Const. art. VI § 1. Certification, however, is within the Court's discretion and is never compulsory. *See* Lehman Bros. v. Schein, 416 U.S. 386, 390–91 (1974) ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory."). This is an important question upon which the Virginia Supreme Court has not ruled and upon which judges in this District have come to opposite conclusions. However, in the present case, neither side has requested certification. Moreover, this case has been pending on the Court's docket for nearly 30 months, discovery is nearly complete, and a trial date looms near. Certification to the state supreme court would cause unnecessarily delay and further expense to the parties. Despite the importance of the question and the divergence of federal authority on the matter, the Court concludes certification would be inappropriate under the circumstances. *Accord* Legard v. EQT Prod. Co., 771 F.Supp.2d 607, 609–10 (W.D. Va. 2011).

of Appeals for the Fourth Circuit had the opportunity to address a similar issue. In Bly, the plaintiff's decedent was fatally injured at his workplace when he backed up his truck without looking and ran into a canister located on another truck. As a result of the collision, the guard on Bly's truck fell to the ground, and he followed, suffering the fatal injury when he was crushed between the canister and the controls of his truck. Bly's estate brought negligence and warranty-of-merchantability claims against the manufacturer of the truck he was driving. Bly's accident happened in September 1979. As part of its case, the plaintiff introduced evidence that prior to the Bly accident, Otis had been notified of another death in 1977 involving the same type of truck at the same location.

The trial court granted a directed verdict on the negligence count and the case was submitted to the jury solely on the warranty claim. The trial court also instructed the jury that while Otis's original duty to warn ended in 1948, when it refitted the truck, under the appropriate circumstances, the jury could find a "renewal" of the duty to warn after Otis learned of the 1977 death. The jury returned a general verdict against the defendant, and the defendant appealed.

The Fourth Circuit, applying Virginia law, held that the trial court erred when it instructed the jury that it could find a renewed duty to warn after Otis learned of the 1977 death. In so doing, however, it distinguished between negligence-based theories of liability and strict liability theories. Since strict liability focuses on the danger of the product rather than the conduct of the manufacturer, the Fourth Circuit concluded, it would be nonsensical to find that a product which is not "unreasonably dangerous" at the time it leaves the manufacturer's hands suddenly becomes so at some later date. *Id.* at 1045. The court contrasted this with a negligence theory, which focuses on the conduct of the manufacturer, and where the duty to warn is not interrupted by the sale of a product. *Id.* at 1045–46. The clear implication from this reasoning is

10

Case 7:09-cv-00410-JCT-RSB   Document 128   Filed 05/16/12   Page 10 of 15   Pageid#: 1009

that while the duty to warn clearly ceases at the time of sale in a strict liability action, it does not necessarily do so in a negligence action.

In Featherall v. Firestone Tire & Rubber Co., 252 S.E.2d 358 (Va. 1979), an employee of a bottling company was injured when a soda syrup tank exploded and the tank's lid flew off and hit him in the head. He brought suit against Firestone, the manufacturer of the syrup tank, and Cornelius, the manufacturer of the lid. In holding that Cornelius was not subject to liability, the Supreme Court of Virginia adopted a standard for the duty to warn, finding that a product manufacturer is subject to liability for failure to warn where it (a) knows or has reason to know that the product is or is likely to be dangerous for the use for which it is supplied; (b) has no reason to believe that the person to whom the product is sold will realize its dangerous condition; and (c) fails to exercise reasonable care to inform the purchaser of its dangerous condition or the circumstances under which it will become dangerous. *Id.* at 366 (quoting Restatement (Second) of Torts § 388 (1965)). In adopting this standard, the court was silent as to whether the duty applied to defects discovered after the product had been sold. But in holding that the plaintiff had failed to meet the summary judgment standard on his failure to warn claim against Cornelius, the court commented that "there was no evidence that Cornelius had actual or constructive knowledge that its lids were being used with Firestone tanks, or that if they were so used the combination failed to function properly." *Id.* at 367. This, of course, was dicta. However, it is reasonable to presume that Cornelius could not have learned that its lids were being used with Firestone tanks, or that the combination failed to function properly, until *after* the lids left its hands. From Featherall, then, one can conclude that the Virginia Supreme Court has at least contemplated a post-sale duty to warn, if not explicitly adopted one.[5]

---

[5] At least one Virginia trial court has also considered the issue of whether to recognize a post-sale duty to warn. In Hart v. Savage, No. L-04-1663, 2006 WL 3021110 (Va. Cir. Ct. Oct. 19, 2006), the Circuit

11

A number of judges in this District have had the opportunity to play the same guessing game as the undersigned must perform today, and their opinions have generally lined up along two analytic schools of thought. In Estate of Kimmel v. Clark Equip. Co., 773 F.Supp. 828 (W.D. Va. 1991) (Crigler, Mag. J.), a 15 year-old employee was killed when the forklift he was operating overturned. *Id.* at 829. The decedent's estate brought suit against the manufacturer of the forklift for, *inter alia*, negligently failing to warn foreseeable users of the dangers inherent in the operation of the forklift. The defendant moved *in limine* to exclude evidence and jury instructions implying that it had a duty to warn arising out of conditions of which it learned *after* the product was sold. The Kimmel court appears to have interpreted the Virginia Supreme Court's adoption of Section 388 of the Restatement of Torts in Featherall to reflect the limits of Virginia law—that is, as a ceiling, rather than a floor. *See id.* at 831. The court conluded that while "no duty to warn arises simply because a manufacturer discovers new information about a product after the product has already left its hands . . . . evidence is admissible to show that the information should or could have been known to a manufacturer exercising reasonable care at the time of production and sale." *Id.* Accord Ambrose v. Southworth Products Corp., 953 F.Supp. 728 (W.D. Va. 1997) (Michael, J.) (adopting Kimmel reasoning).

By contrast, in McAlpin v. Leeds & Northrup Co., 912 F.Supp. 207 (W.D. Va. 1996) (Conrad, Mag. J.), an employee was killed when an annealing oven exploded at the foundry where he worked. The employee's estate brought suit against the companies that designed and manufactured various components of the oven. Relying on Bly and another Fourth Circuit case,

---

Court for the City of Norfolk ultimately declined to recognize a post-sale duty to warn because it did not feel that it was at liberty to recognize a post-sale duty to warn where the General Assembly and the Virginia Supreme Court had not explicitly done so. *Id.* at *3. Because this Court is not bound by the same restrictions, Hart is of limited persuasive value and does not merit extended analysis.

12

Island Creek Coal Co. v. Lake Shore Inc., 832 F.2d 274 (4th Cir. 1987),[6] the McAlpin court started with the proposition that the Fourth Circuit had recognized that Virginia law provided a duty to warn as a general matter. Reasoning that there was no Virginia caselaw supporting the idea "that a manufacturer should be relieved of liability for failure to warn . . . if it learns of a potential danger to a buyer only after the product has left the manufacturer's hands" and considering the policy implications of a post-sale duty to warn, the McAlpin court held that Virginia recognized a post-sale duty to warn. 912 F.Supp. at 210–12.

Finally, in Rash v. Stryker Corp., 589 F.Supp.2d 733 (W.D. Va. 2008) (Jones, C. J.), yet another judge in this District had the opportunity to consider this very question. In Rash, the plaintiff suffered injuries resulting from the use of a "pain pump" manufactured by the defendants, and brought, *inter alia*, a claim for breach of a post-sale duty to warn. The manufacturer moved to dismiss. Surveying the laws of other states, looking at the Restatement of Torts, and considering dicta in the Fourth Circuit's opinion in Bly, as well as the McAlpin decision, the Rash court found it likely that the Supreme Court of Virginia would recognize a post-sale duty to warn as part of an action for negligence. *Id.* at 735–36.

### b. The Restatement and the Trend Among States

The contours of the modern post-sale duty to warn are aptly summarized by the Restatement of Torts:

> (a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning

---

[6] Island Creek appears to have assumed the existence of a post-sale duty to warn: "There seems no question that, if the defendant discovered that the machine it had sold to the plaintiffs was not safe, it had a duty to notify the plaintiffs and a failure to do so would be actionable negligence." 832 F.2d at 280. However, in context, this was clearly dicta, since the court was only considering the propriety of the district court's denial of a motion to amend. Moreover, the Island Creek court appears to have been applying the substantive law of Michigan. *See id.* at 276 n.1. Accordingly, Island Creek is of limited value here.

13

> after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.
> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
>> (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
>> (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
>> (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
>> (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts § 10 (1998). To be sure, this section of the Restatement was not adopted without consternation. *See* James A. Henderson, Jr. & Aaron D. Twerski, *The Politics of the Products Liability Restatement*, 26 Hofstra L. Rev. 667, 692 (1998). Nonetheless, it is reflective of the modern trend. Some version of a post-sale duty to warn has been adopted in over 30 states. Kenneth Ross, *Avoiding Future Problems: The Increased Duty to Take Post-Sale Remedial Action*, *in* Am. Bar Ass'n., POST-SALE DUTY TO WARN 38, 39 (Kenneth Ross, ed., 2004).

Considering the Virginia Supreme Court's dicta in Featherall, the Fourth Circuit's dicta in Bly, the public policy implications of a post-sale duty to warn, and the modern trend among states, the Court finds that the Supreme Court of Virginia, if presented the opportunity, would likely recognize a post-sale duty to warn. Accordingly, it declines to dismiss that part of King's action which alleges a breach of a post-sale duty to warn.

\\

\\

\\

\\

## IV. Conclusion

For the foregoing reasons, F&D's Motion to Dismiss (ECF No. 119) is **GRANTED in part and DENIED in part**. An appropriate Order shall issue this day.

ENTER: This 16th day of May, 2012.

*/s/ James C. Turk*
Senior United States District Judge